UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA NEIL HARRELL,<br><br>Plaintiff,<br><br>v.<br><br>SOLANO COUNTY JAIL, et al.,<br><br>Defendants. | No. 2:14-cv-1690 TLN CKD P<br><br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action seeking relief under 42 U.S.C. § 1983. This action proceeds on the original complaint filed July 17, 2014, in which plaintiff alleges that defendant Weary, a correctional officer at the Solano County Jail, retaliated against him in 2014 for filing inmate grievances. (ECF No. 1.) The court found that the complaint stated a First Amendment claim against Weary and ordered service on this defendant. (ECF Nos. 4 & 17.)

Before the court are the parties' cross-motions for summary judgment. (ECF Nos. 74 & 81.) After careful consideration of the arguments and the record, the undersigned will recommend that defendant's motion for summary judgment be granted.

////

////

1

II. <u>Summary Judgment Standards Under Rule 56</u>

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u>

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. <u>See</u> Fed. R. Civ. P. 56(c); <u>Matsushita</u>, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

////

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

III. Analysis

A. Allegations

In his verified complaint, plaintiff alleges as follows:

> On 6-17-2014 . . . in the Solano County Jail, Close K Detention Facility, Officer O. Weary called me 'punk ass' and I wrote grievance #14000809. On 6-19-2014, Officer O. Weary threatened to 'beat my ass,' see grievance #14000811. On 6-21-2014, Officer O. Weary disposed of my appeals to [the above grievances], see grievance #14000287. I was moved from cell living to dorm living, subject to 20+ hour a day lockdown.

(ECF No. 1 at 3.) Plaintiff claims that, after he filed grievance #1400287, he was moved from dorm living to cell living as a "punishment" for the incidents with defendant Weary. (Id. at 8-9.)

////

////

3

B. Facts

The following facts are undisputed unless otherwise noted:

In June 2014, plaintiff was housed in the Solano County Jail. (Defendant's Separate Statement of Undisputed Facts ("DUF") 9.) The jail has an inmate grievance system consisting of two levels, with the grievance typically being investigated by a sergeant at the first level and a lieutenant at the second level. (DUF 8.)

Plaintiff made a number of complaints about a particular staff person, defendant Officer Weary. (DUF 10.) In a grievance dated June 18, 2014 (No. 14000809), plaintiff complained that defendant had referred to him as a 'punk ass,' meaning plaintiff was gay. (DUF 11.) Plaintiff's grievance was forwarded to non-defendant Sergeant Olmstead, who responded in part: "Obviously you have a conflict with Ofc Weary. There are seven other officers that work that section; please have your dealings with them. If you follow jail rules then Ofc Weary will not have to speak with you as well." (DUF 12-14; see ECF No. 75-2, Olmstead Decl., Ex. A.) Defendant declares that he did not make any such comment to plaintiff. (ECF No. 81-4, Weary Decl..)

In a second grievance dated June 19, 2014 (No. 14000811), plaintiff alleged that defendant denied him his vegetarian meal and then threatened him. (DUF 16-17.) Plaintiff claimed in the grievance that Weary told him: "I'm a real nigga and I will beat your ass." (DUF 22; see Olmstead Decl., Ex. B.) Defendant declares that he provided plaintiff a vegetarian tray, which plaintiff refused to accept, and denies making any threats toward plaintiff. (Weary Decl., ¶ 3.)

In a third grievance dated June 22, 2014 (No. 14000827), plaintiff claimed that defendant intercepted his last two grievances and prevented them from being forwarded to the lieutenant for a response at the second level. (DUF 25.) Sgt. Olmstead responded to the grievance, informing plaintiff that the lieutenant had his grievances and would be responding to them once he completed his investigation. (DUF 26; see Olmstead Decl., Ex. C.)

On June 27, 2014, second level responses to grievances No. 14000809 and No. 14000811 were completed, and plaintiff was informed that he had exhausted administrative remedies as to

4

those issues. (DUF 27-28; see Olmstead Decl., Exs. A & B.) The jail officials investigating these claims did not find that defendant committed misconduct in either case. (Id.)

In his sworn declaration, Olmstead states:

> When an inmate at the Solano County Jail has made repeated complaints about an officer, or has had repeated confrontations with an officer, it is the standard practice to attempt to defuse the situation by separating the inmate and the officer so that they will have little or no further contact with each other. Since there are multiple officers assigned to a housing unit, this separation may simply be achieved by instructing the inmate to avoid speaking with the officer and directing him to instead interact with the other officers on the unit. If that is not practicable or proves ineffective, the standard practice is to physically separate the inmate and the officer by simply moving the inmate to a different housing unit where he will no longer have contact with the officer in question. This practice has the added benefit of ensuring the inmate's safety while his complaints about an officer are being investigated. The practice is particularly important when an inmate has alleged that an officer has threatened his safety.

(Olmstead Decl., ¶ 2.)

When plaintiff's grievances about defendant continued after Sgt. Olmstead advised plaintiff to avoid interacting with him, Olmstead determined that the safest course of action for both plaintiff and defendant would be to move plaintiff to a different housing unit where he would no longer have interactions with defendant. (DUF 31.) Olmstead believed that moving plaintiff was an effective way of de-escalating the situation by separating him from defendant. (DUF 36.) Because the move did not make a change in classification, it was not necessary for Olmstead to consult with classification staff. (DUF 32.) On or about June 22, 2014, Olmstead moved plaintiff from the P module to the G module. (DUF 33-34.)

Olmstead explained to plaintiff that he was being moved because he had an issue with an officer who worked in the P module. (DUF 35.) Defendant was not involved in the decision to move plaintiff and did not participate in the move. (DUF 37.) Defendant further declares that he did "not request that Harrell be moved . . . The purpose of the move was to separate Harrell from myself, placing Harrell in a housing unit where he would no longer have any contact with me." (Weary Decl., ¶¶ 6-7.)

////

Both the G module and P module are minimum security housing units at the jail. (DUF 38.) The only significant difference between them is that P module inmates live in a dorm setting while G module inmates live in two-person cells. (DUF 39.) An inmate's access to programs, visiting, and commissary remain the same whether he is in a cell or in a dorm. (DUF 43.) G module inmates are generally provided between two and four hours outside their cells per shift, and there are three shifts per day. (DUF 41.) Sgt. Olmstead declares that "[m]ost inmates actually prefer living in the [G module] cells because of the privacy. . . Inmates in cells also have access to their own toilets, as opposed to inmates in a dorm setting that must share a bathroom with all of the other inmates." (Olmstead Decl., ¶ 12.) Plaintiff declares that he "hate[s] being in a cell and the move created an 'atypical and significant hardship' on me." (ECF No. 87 at 16.)

On June 23, 2014, plaintiff filed a fourth grievance (No. 14000835) requesting to be moved back to the dorms. (See Olmstead Decl., Ex. D.) Plaintiff claimed he was moved as punishment for filing grievances about officer misconduct. (Id.) The next day, Sgt. Olmstead responded to the grievance, stating: "[Y]ou were moved from one minimum security unit to a different minimum security because you have an issue with an officer that works in that area. I explained this to you when I moved you." (Id.) On June 27, 2013, plaintiff received a second level response to his grievance, stating: "After reviewing the circumstances surrounding this grievance, I believe the decision to move you away from this situation temporarily to be a reasonable one. . . . It seems a cooling off period for both was in order and that is what transpired." The second-level response exhausted administrative remedies for this issue. (Id.)

C. Legal Standard

To establish a First Amendment retaliation claim, plaintiff must show: (1) an adverse action against him; (2) because of; (3) his protected conduct, and that such action; (4) chilled his exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005). "The mere threat of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." Brodheim v. Cry, 584 F.3d 1262, 1270 (9th Cir. 2009). The threat need not be explicit or specific. Id. Rather the question for the court is whether a reasonable

factfinder could interpret the statements as "'intimating that some form of punishment or adverse regulatory action would follow.'" See id. (quoting Okwedy v. Molinari, 333 F.3d 339, 343 (2d Cir.2003)).

D. Discussion

As a preliminary matter, mere verbal harassment or abuse does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). Thus the court looks to whether a genuine dispute of fact exists whether Weary's actions, viewed in the light most favorable to plaintiff, were made in retaliation for protected activity.

Here, there is no evidence that defendant interfered with the administrative grievance process when plaintiff filed complaints against him. Plaintiff's grievances about defendant received prompt responses at both the first and second levels. Also, it is undisputed that defendant was not responsible for the decision to move plaintiff from a minimum security dorm setting to a minimum security cell; he did not even request the move. Thus, defendant did not take any "adverse action" against plaintiff, assuming arguendo that the move from P module to G module was "adverse."

Moreover, even if Olmstead were added as a defendant in an amended complaint, it does not appear that the decision to move plaintiff to G module violated plaintiff's First Amendment rights, as it appears to have reasonably advanced a legitimate correctional goal. See Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) ("[A] successful retaliation claim requires a finding that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not narrowly tailored enough to achieve such goals. [Citations omitted.] The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains."); see also Sandin v. Conner, 515 U.S. 472, 482-83 (1995) ("[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment," especially in "the fine-tuning of the ordinary incidents of prison life"). Viewed in the light most favorable to plaintiff, the record supports the conclusion that plaintiff was moved to separate him from a particular officer with whom he had frequent

conflicts, and against whom he had pending complaints, in order to prevent future conflicts.  As plaintiff was moved to a comparable minimum security unit, the action taken (assuming <u>arguendo</u> it was "retaliatory") was narrowly tailored to meet this legitimate goal.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 74) be denied; and

2. Defendant's motion for summary judgment (ECF No. 81) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 25, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 / harr1690.sj